# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

ALI REGINAL JAMES                          CIVIL ACTION NO. 07-1104

VS.                                        SECTION P

SHERIFF SID HEBERT, ET AL.                 JUDGE MELANÇON

                                           MAGISTRATE JUDGE METHVIN

### *REPORT AND RECOMMENDATION*

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on June 28, 2007 by *pro se* plaintiff Ali Reginal James.  Plaintiff is an inmate in the custody of the Iberia Parish Sheriff. He is incarcerated at the Iberia Parish Correctional Center (IPCC) and complains about conditions of confinement and inadequate medical treatment.  He names as defendants, Iberia Parish Sheriff Sid Hebert and IPCC Warden Roberta Boudreaux. (In his initial complaint he sued the Secretary of the Louisiana Department of Public Safety and Corrections (LDOC), however, he omitted this defendant from his amended complaint.)  He prays for an order directing the defendants to repair broken plumbing at IPCC; for an order directing the defendants afford him an MRI examination; and he seeks $50,000 in compensatory damages.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.  For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous pursuant to the provisions of 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1).

2

## *Background*

### *1. Original Complaint [doc. 1]*

Plaintiff alleged that on May 20, 2007 he slipped and fell in a pool of water in his dormitory at IPCC. Plaintiff claimed that the water leaked onto the floor from the toilet and from pipes in the wall.  According to plaintiff, Warden Boudreaux was aware of the leaks.  Plaintiff was immediately taken to the hospital and given an injection for pain; he was given pain medication to be dispensed upon his return to IPCC. Plaintiff's prescribed medication was discontinued after one week, however, plaintiff claimed that he remained in pain. He requested sick-call and was examined by a nurse who provided "Ibus"[1] for pain.

Plaintiff complained of continuing pain in his neck, back, and head and complained that he should have received an MRI [2] examination to determine an appropriate diagnosis. Plaintiff complained that his injury prohibits him from sitting or standing for long periods of time. His requests to see a physician and his requests for a better mattress have been ignored.

---

[1] Ibu® or ibuprofen is a non-steroidal anti-inflammatory drug (NSAID) used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints) and rheumatoid arthritis (arthritis caused by swelling of the lining of the joints). It is also used to relieve mild to moderate pain. Nonprescription ibuprofen is used to reduce fever and to relieve mild pain from headaches, muscle aches, arthritis, menstrual periods, the common cold, toothaches, and backaches. Ibuprofen works by stopping the body's production of a substance that causes pain, fever, and inflammation. See Medline Plus, A service of the U.S. National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/ druginfo/medmaster/ a682159.html

[2] Magnetic resonance imaging (MRI) is a noninvasive procedure that uses powerful magnets and radio waves to create pictures of the spine area, including the vertebrae (spine bones), the spinal cord, and the spaces between the vertebrae through which the nerves travel.  See Medline Plus, A service of the U.S. National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/ency/article/003792.htm

3

Plaintiff complained that water continues to leak into the inmates' living area.  He complained that this constant leaking has increased the danger of slipping.  He complained that there are no adequate places to drink water and the drinking water is "always hot" and "not sanitized."

Plaintiff requested "...relief that suits the public interest and better medical attention ..."

In a pleading filed on July 16, 2007 he requested appointment of counsel. [doc. 5]

**2. Amended Complaint**

On August 30, 2007, plaintiff was directed to amend his complaint and  to describe in more detail the allegations of fault as to each defendant. He was also directed to describe the injury he claims to have sustained as a result of the defendants' fault. He was also informed of and directed to address the standard of "deliberate indifference" as it relates to his conditions of confinement and medical care claims.  Finally, he was provided instruction on the issue of supervisory liability as it relates to civil rights claims asserted under 42 U.S.C. §1983 and he was directed to amend his complaint to address that issue. [doc. 8]

On September 12, 2007 he filed an amended complaint; however, since the amended complaint was not identified as an amended complaint, and since the amended complaint was set forth on the form supplied for prisoners for filing civil rights complaint, the amended complaint was inadvertently docketed as a separate civil rights complaint and assigned Docket Number 6:07-cv-1518. When this error was discovered, the latter civil action was dismissed and the complaint was re-filed in the instant case. [See 6:07-cv01518 at doc. 5]

According to the amended complaint, plaintiff arrived at the dormitory in question on May 10, 2007. He claimed that prior to that date, his fellow  inmates had lobbied the jail

4

administration to repair the leaking pipes responsible for causing water to accumulate on the floor. Further, according to plaintiff, officers who entered the dorm claimed that they submitted reports of the dormitory's condition to Warden Boudreaux.

In any event, as noted above, plaintiff allegedly slipped and fell in one such puddle of water on May 20, 2007. He was immediately rushed to a nearby hospital and given an injection of pain medication and provided additional doses of pain medication for use upon his return to IPCC. On May 27, 2007, plaintiff was still in pain. On May 28, 2007 he requested an examination and his request was granted. Plaintiff was examined by the IPCC nurse who provided Ibuprofen for pain.

Nevertheless, plaintiff continues to complain of pain. He implies that the defendants should have ordered an MRI to determine whether "major damage" was sustained as a result of his fall. Plaintiff claims that on July 18, 2007 he requested "better medical attention" from the warden.  He requested to "... see the doctor without having to pay for it..." The Warden granted this request and plaintiff was examined by a physician who gave plaintiff a week's supply of pain medication. According to plaintiff, the physician told plaintiff that if the pain did not subside within two weeks, plaintiff should have a "CAT Scan" or MRI.  On August 6, 2007 plaintiff's "neck still had the pinching feeling" and his head and back ached. He requested another examination; by September 9, 2007 his request had yet to be answered.

Plaintiff claims that the pipes from the toilet leak into the inmates' living area.  As a result, plaintiff and his companions "... face the danger of slipping and falling down daily ..." Further, plaintiff complains that there is no "adequate place to drink water" because the water cooler is "not sanitized" and the water cooler is "nasty."

5

Plaintiff implies that Warden Boudreaux is liable because she oversees the operations of the facility.  According to plaintiff, inmates and corrections officers  notified Warden Boudreaux about the water leaks and unsanitary conditions, but she refused to address these problems. Further, he claims that Boudreaux is liable because she has not directed the nurse to "... arrange for further treatment..." of his medical problems.

Plaintiff likewise implies that Sheriff Hebert is liable because he "... is the sheriff over the staff at Iberia Parish Jail [and] he knows about the problems of the leakage, unsanitary [conditions] and [plaintiff's] medical problems..." because he has received letters and telephone calls concerning these problems and has previously acknowledged that he will make sure that plaintiff gets "proper medical attention."

In his amended complaint he asked that the defendants be ordered to repair the leaks, and to afford him an MRI. Finally,  he requested damages of $50,000 for pain and suffering.

### Law and Analysis

### 1. Appointment of Counsel [doc. 5]

Initially, the undersigned notes that plaintiff is proceeding in *forma pauperis*. [See docs. 6 and 7] A review of plaintiff's financial affidavit supports a finding that he should be considered indigent for the purposes of this evaluation.

Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983.  "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th

6

Cir. 1985).  Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff.  In the case of *Mallard v. United States District Court for the Southern District*,  490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and  *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989).  No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors:  the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14;

7

*see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court

may consider whether a plaintiff has demonstrated the inability to secure private counsel

on his own behalf. *See  Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is

not excused from trying to procure counsel for himself.

In his civil rights complaint, plaintiff alleges a conditions-of-confinement claim

along with a claim of inadequate medical treatment.  Plaintiff has managed to file his

original complaint and an amended complaint setting forth his causes of action against the

named defendants.  No special legal knowledge is required of plaintiff herein.

Additionally, plaintiff has first hand knowledge of the facts which form the basis of this

action. The claim is typical of those often asserted in civil rights litigation and is not

complex.  Finally, plaintiff has failed to demonstrate that he has attempted to procure

counsel on his behalf.  Indeed, his motion for appointment of counsel is ambiguous. He

initially claimed that he has not spoken to an attorney [doc. 5, paragraph A] then claimed

that he "... tried to phone, but none would take my case..." [*Id.*, paragraph B]

Accordingly, plaintiff's request for appointment of counsel should be denied as the

circumstances presented herein are not "exceptional" so as to  warrant the appointment of

counsel.  Moreover, plaintiff's request should be denied because plaintiff has failed to

demonstrate any effort to secure counsel on his own behalf. Finally, as is shown

hereinafter, plaintiff's claims are frivolous and appointment of counsel would not benefit

8

the petitioner, the court, or the defendants by shortening the proceedings and assisting in a just determination of the claims.

## 2. Initial Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact.  *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).  A civil rights complaint fails to state a claim upon which relief can be granted if  it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

9

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has filed a complaint and an amended complaint. He argued specific legal theories and  provided a detailed recitation of the facts in support of his claims for relief. Plaintiff need not be afforded an opportunity for further amendment.

### 3. Conditions of Confinement

Plaintiff complains about conditions of confinement at the IPCC arguing two specific claims related to the leaking water pipes at the facility. First, he argues that the leaking pipes have resulted in unsanitary conditions; second, he argues that the leaking pipes create a slip and fall hazard at the facility.

"The Constitution 'does not mandate comfortable prisons,' ... but neither does it permit inhumane ones...." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). Prison officials must provide humane conditions of confinement, including adequate food, shelter, medical care, and reasonable safety. *Farmer*, 511 U.S. at 832 (citations omitted).

"A two-part test determines whether a prisoner has established a constitutional violation." *Harper v. Showers*, 174 F.3d 716, 719-20 (5th Cir.1999) (citing *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)). The prisoner must show: "first, that the deprivation alleged was sufficiently

10

serious ...; and second, that the prison official possessed a sufficiently culpable state of mind."

*Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir.2001). For the second element of a conditions of

confinement claim, the Supreme Court has defined "culpable state of mind" to mean that the

"official acted with deliberate indifference to inmate health or safety." *Id.* "It is ... fair to say that

acting or failing to act with deliberate indifference to a substantial risk of serious harm to a

prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. At this

step, the prisoner must show that the "defendant officials '(1) were aware of facts from which an

inference of excessive risk to the prisoner's health or safety could be drawn and (2) ... actually

drew an inference that such potential harm existed.'" *Herman*, 238 F.3d at 664 (quotation

omitted).

### a. Unsanitary Conditions

With regard to the general unsanitary conditions occasioned by the leaking pipes, plaintiff

has alleged no harm resulting from these conditions.  Because the Eighth Amendment prohibits

cruel and unusual <u>punishments</u>, not merely cruel and unusual <u>prison conditions</u>, a plaintiff must

allege that he suffered a "serious or significant physical or mental injury as a result of the

challenged condition." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993); *White v.*

*Gregory*, 1 F.3d 267, 269 (4th Cir.1993).  Plaintiff has failed to make such an allegation,

therefore, his conditions of confinement complaint based upon unsanitary conditions of

confinement fails to allege a claim for which relief may be granted.

Further, to the extent that plaintiff might suggest a mental or emotional injury resulting

from the unsanitary conditions, his claim is also subject to dismissal. Under 42 U.S.C.

11

§ 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The "'physical injury' required by § 1997e(e) 'must be more than *de minimus* [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997)) (alteration in original).  As shown above, plaintiff has alleged no physical injury resulting from the unsanitary conditions of confinement at IPCC.   Since he has alleged no physical injury as a result of these conditions of confinement, he has failed to state a claim for which relief may be granted. *Alexander v. Tippah County, Miss*., 351 F.3d 626 (5th Cir. 2003), *cert. denied*,  541 U.S. 1012, 124 S.Ct. 2071, 158 L.Ed.2d 623 (2004); *Herman v. Holiday*, 238 F.3d 660 (5ᵗʰ Cir. 2001).

   ***b. Slip and Fall***

   With regard to the slip and fall component of his claim, his complaint fares no better. While in this instance plaintiff has alleged an injury associated with the complained of condition of confinement, the claim itself is a claim alleging negligence on the part of the defendants, and such acts of negligence or neglect are insufficient to give rise to a §1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991); *Richardson v. McDonnell*, 841 F.2d 120 (5th Cir.1988).   Slippery floors constitute a daily risk faced by the public at large. Cases from other jurisdictions have held that slippery floors simply do not violate the Eighth Amendment. See, e.g., *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir.1993) ("slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment") (quoting *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir.1989)); *Denz v. Clearfield County*, 712 F.Supp. 65, 66 (W.D.Pa.1989) (slippery cell from humidity); *Robinson v. Cuyler*, 511 F.Supp. 161, 163

12

(E.D.Pa.1981) (slippery kitchen floor); *Tunstall v. Rowe*, 478 F.Supp. 87, 89 (N.D.Ill.1979) (greasy stairway); *Snyder v. Blankenship*, 473 F.Supp. 1208, 1212 (W.D.Va.1979) (pool of soapy water from leaking dishwasher).

### 4. Inadequate Medical Care

To state a cause of action for inadequate medical care, a prisoner needs to show deliberate indifference to a serious medical need, which constitutes the unnecessary and wanton infliction of pain that is proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

A delay in medical care can only amount to an Eighth Amendment violation if there has been a deliberate indifference, resulting in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993). A complaint alleging negligence in diagnosis or treatment does not state a constitutional claim. See *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

Plaintiff's pleadings establish that he was provided immediate diagnosis and treatment after each complaint.  Nevertheless, plaintiff complains not that he was denied treatment for his known injuries, but rather that the defendants have denied him a diagnostic procedure. In particular, plaintiff implies that the defendants have acted with deliberate indifference because they refused to order an MRI. Such a claim cannot form the basis of a constitutional violation. As the Supreme Court has expressly noted, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Thus, a "medical decision" concerning whether to order an X-ray, CAT scan, MRI,  or similar diagnostic test, "does not represent cruel and unusual punishment." *Id.* "At most it is medical malpractice." *Id.* It is well established that

13

allegations of malpractice or "mere negligence in failing to supply medical treatment" will never suffice to demonstrate an Eighth Amendment claim. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir.2001), *cert. denied*, 534 U.S. 1136 (2002); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.) ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."), *cert. denied sub nom. Stewart v. Knutson*, 528 U.S. 906 (1999).

To the extent that plaintiff remains dissatisfied with the prison officials' diagnoses,  the Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. See *Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir.2006); *Stewart*, 174 F.3d at 535; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985). Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. See *Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir.1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993)). Because plaintiff has not articulated a constitutional violation, his complaint fails to state a claim upon which relief can be granted; therefore, it is subject to dismissal under § 1915(e)(2)(B).

Accordingly**,**

Petitioner's Motion for Appointment of Counsel [doc. 5] is **DENIED;** and, further,

**IT IS RECOMMENDED**  that plaintiff's Civil Rights Complaint be **DISMISSED** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(d)(2)(b)(i) and (ii) and § 1915A(b)(1).

14

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on October 17, 2007.

_____

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)